**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEYSHA WHITAKER, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:04-cv-2041 (JCH) |
| | : | |
| CLEAR CHANNEL BROADCASTING, | : | |
| INC. d/b/a WPHH, TROI TERRAIN, | : | |
| MIGUEL CANDELARIA, | : | |
| Defendants. | : | DECEMBER 16, 2005 |

**RULING ON DEFENDANTS' MOTION TO COMPEL ARBITRATION [DKT. NO. 10]**

The plaintiff, Keysha Whitaker, initiated this employment discrimination action against the defendants pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. and the laws of the state of Connecticut.  The defendants, Clear Channel Broadcasting, Inc. ("WPHH"), Troi Terrain, and Miguel Candelaria, move to stay this action and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and Conn. Gen. Stats. § 52-408 et seq.  For the following reasons, the defendants' motion is DENIED.

**I.   FACTUAL BACKGROUND[1]**

---

[1] Typically, "the party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." Tellium, Inc. v. Corning Inc., No. 03-civ-8487(NRB), 2004 WL 307238, at *5 ((S.D.N.Y. Feb. 13, 2004)(citing Progressive Cas. v. C.A. Reaseguradora Nacional, 991 F.2d 42, 46 (2d Cir.1993)).  "In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment.  If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (internal citations omitted).

Here, the defendants have averred a set of facts in their Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [Dkt. No. 11], and have attached as exhibits the employee handbook and employment offer in question.  The defendants have not, however, submitted any affidavits attesting to the veracity of the averred facts.  The plaintiff does not dispute the facts as

1

Whitaker was offered employment at WPHH, a radio station in Hartford Connecticut that is owned and operated by Clear Channel Broadcasting, Inc., in February 2004.   The terms and conditions of Whitaker's employment were stated in a memorandum (hereinafter "offer letter")  that Whitaker signed on February 6, 2004.  The offer letter stated, in part: "[w]e are pleased to offer you a position with Clear Channel Broadcasting, Inc. d/b/a WPHH (hereinafter "Company") in Hartford, CT, as set forth below.  This memo supercedes any previous documents regarding our offer of employment or compensation arrangement with the company."  Def's Memo. in Support, Ex. A.  In a series of bullet points, the offer letter describes Whitaker's title and compensation, and states that Whitaker's employment is "at-will."  Id.  The third bullet point reads, "[o]ur offer to employ you is also contingent upon your written acknowledgment of receipt of the Company's Employee Guide that outlines the Company's policies."  Id.  The offer letter also states: "If you agree with and accept the terms of this offer letter, please sign below . . . ."  The offer letter bears Whitaker's signature as well.

According to the defendants, Whitaker was also provided with the Employee Guide at the time she was hired, and the Guide was available to Whitaker at all times in electronic form.  Page six of the Guide includes this disclaimer:

---

described by the defendants but argues, inter alia, that, even if credited, the averred facts do not demonstrate the existence of an arbitration agreement between the parties.  This inquiry, therefore, is most akin to a motion to dismiss a complaint for failure to state a sufficient claim.  Accordingly, the court will describe the facts as they are asserted in the defendants' memorandum and accompanying documents.

>Except with respect to the Arbitration Agreement contained in this guide, this guide is not a contract or a contractual commitment of continued employment.  Except as otherwise required by law, this guide may be modified without prior notice.  This guide applies to all U.S. employees except where superseded by specific terms of an express, and signed written contract signed by the head of your Division or valid collective bargaining agreement . . . .

Id., ex. B, p. 6.  The Guide contained a lengthy arbitration agreement that stated, in part:

>If you and the Company have a legal dispute (i.e. , a dispute that could otherwise be brought in court) and we can't resolve it through our Open Door Policy, then we will use arbitration. . . .  Accordingly, we require that new, non-union employees sign an agreement promising that all covered claims as defined in this Agreement, [sic] will be submitted to final and binding determination by an impartial arbitrator . . . .
>
>By this Arbitration Agreement, however, employees give up their right to sue the Company, and the Company is giving up its right to sue employees in court, as well as the right to trial by jury.  Instead, the Company and employees hereby agree that any covered legal claim that either may have against or with the other will be submitted solely to a private, impartial arbitrator . . . .
>
>As a condition of employment with the Company, each employee hereby <u>waives his/her right to sue</u> the Company, and the Company hereby waives its right to sue the employee, for any claim or cause of action covered by this Agreement . . . .

Id., p. 36 (emphasis in original).  The defendants concede that the plaintiff did not sign an acknowledgment of receipt of the Employee Guide as required by the offer letter. Def's Reply Memo., p. 3 [Dkt. No. 16].   The defendants have also not produced, nor averred the existence of, a signed agreement "promising that all covered claims . . . will be submitted to final and binding determination by an impartial arbitrator."

Whitaker's employment at WBHH ended in May or June of 2004,[2] and she filed an administrative charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") shortly thereafter. Whitaker commenced this suit in December 2004 after receiving right-to-sue letters from the CHRO and the Equal Employment Opportunity Commission. The defendants subsequently filed this motion to compel arbitration and stay proceedings.

## II.  LEGAL STANDARD

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). "Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." Doctor's Associates, Inc. v. Hamilton, 150 F.3d 157, 162 (2d Cir. 1998).

In determining whether to compel arbitration pursuant to the FAA, a court looks to four factors: 1) whether the parties agreed to arbitrate their dispute; 2) whether the asserted claims fall within the scope of the arbitration agreement; 3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable, and 4) if the court concludes that some, but not all, of the claims in the

---

[2] The circumstances of Whitaker's departure from WBHH are the subject of the underlying action.

case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration. Morales v. Rent-A-Center, Inc., 306 F.Supp.2d 175, 179 (D.Conn. 2003) (citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir.1987)).

In determining the existence of an arbitration agreement, the court looks to the "ordinary state-law principles that govern the formation of contracts" under the law of the state governing the contract. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In this case, Connecticut law governs. "Even though arbitration has a favored place, there must be an underlying agreement between the parties to arbitrate . . . ." Phillips v. Cigna Investments, Inc., 27 F.Supp.2d 345, 351 (D.Conn.1998)(quoting Hooters of America, Inc. v. Phillips, No. 96-3360-22, 1998 WL 317471, at *25 (D.S.C. Mar. 12, 1998). "Although the FAA evidences a strong presumption in favor of arbitration as to the scope of arbitrable issues, that policy only comes into play after it is determined that the contracting parties have an enforceable arbitration clause." Stephens v. TES Franchising, No. 301CV2267(JBA), 2002 WL 1608281, at *3 (D.Conn. July 10, 2002)(citing Genesco, 815 F.2d at 847).

Similarly, under Conn. Gen. Stat. 52-408 et seq., the existence of a contract to arbitrate claims is a necessary precondition to an action to enforce a right to arbitration. See Jacob v. Seaboard, Inc., 28 Conn.App. 270, 273 (Conn.App. 1992)("The right to arbitration can be created only by contract."); see also Stephens, 2002 WL 1608281, at *3 ("Similarly, under Connecticut law, the presumption favoring arbitration is applicable only where there is an agreement to arbitrate.").

### III. DISCUSSION

While the parties have raised issues regarding the scope and possible waiver of

the alleged arbitration agreement, the threshold question is whether an agreement was formed between Whitaker and WBHH that obligated the parties to arbitrate their claims. "The key to whether an agreement to arbitrate has been made and exists, is the intention of the parties." DePucchio v. Cigna Corp., No. X08CV020193032S, 2003 WL 1787949, at *2 (March 20, 2003)(citing A. Debreuil & Sons, Inc. v. Lisbon, 215 Conn. 604, 608 (1990)). The defendants make several arguments in favor of the proposition that Whitaker is bound by the arbitration agreement included in the Employee Guide.

First, the defendants argue that Whitaker's signed offer letter is evidence of Whitaker's assent to be bound by the arbitration agreement included in the Employee Guide. They argue that Whitaker's acceptance of the offer letter, which references the Employee Guide, is evidence of Whitaker's intention to be bound by all of the terms and conditions of employment that are included in the Employee Guide. They also argue that the fact that Whitaker did not sign an acknowledgment of receipt of the Guide is of no moment, as the offer letter obligated her to sign the acknowledgment upon signing the offer letter, thus Whitaker should be deemed to have constructively acknowledged the contractual terms contained within the Employee Guide. In other words, Whitaker should be presumed to have signed an acknowledgment of receipt, and, accordingly, should be presumed to have agreed to the arbitration agreement included in the Employee Guide. See Morales, 306 F.Supp. at 181 (stating that a signature serves as presumptive evidence that an agreement was formed).

In making this argument, the defendants rely on the district court's decision in Topf v. Warnaco, Inc., 942 F.Supp. 762 (D.Conn. 1996), in which the court found that an employee had agreed to an arbitration agreement contained in an employee

6

handbook by agreeing to the terms in a separate document.  In Topf, the plaintiff employee, prior to commencing work, signed an offer letter that read in part: "[t]his letter will confirm the key terms of our offer of employment to you.  General terms of employment are stated in the Warnaco Job Application and Current Employee Handbook."  Id. at 764.   The employee then received, on the first day of work, an employee handbook that contained an arbitration agreement.  Id.  The plaintiff in Topf also signed an acknowledgment of receipt of the employee handbook.  The acknowledgment stated in part: "I understand that this Handbook is not and was not intended to serve as a contract between Warnaco and myself . . . except that this Handbook is our entire agreement concerning each party's right to arbitrate employment disputes . . . ."  Id. at 765.  The district court in Topf found that the language of the offer letter and acknowledgment was clear evidence of a contract.  Id. at 768.

The offer letter and receipt of acknowledgment in Topf, however, is distinguishable from the facts of the instant case.  In Topf, the offer letter explicitly incorporated the terms of the employee handbook; the offer letter put the employee on clear notice that the handbook included terms that were deemed to be within the offer of employment.  In contrast, the offer letter that Whitaker signed, while mentioning the Employee Guide, did not represent that the Guide included terms to which Whitaker was consenting, and it contained language that could have reasonably led Whitaker to believe that the offer letter contained all significant terms of her employment.  See, Defs. Memo., ex. A ("This memo supercedes any previous documents regarding our offer of employment . . . if you agree with and accept the terms of this offer letter . . .").

Moreover, the court finds it significant that the acknowledgment signed by the plaintiff in Topf explicitly references an arbitration agreement.  Other district courts have also found the explicit reference to arbitration in materials provided to employees relevant in determining whether an agreement to arbitrate claims had been formed. See Sherry v. Sisters of Charity Medical Center, No. 98-CV-6151JG, 1999 WL 287738, at *5 (E.D.N.Y. May 4, 1999)(declining to enforce arbitration clause, distinguishing Topf on the basis that the handbook in Topf had a clearly labeled arbitration section and the signed acknowledgment specifically mentioned arbitration); Maye v. Smith Barney, Inc., 897 F.Supp. 100, 107 (S.D.N.Y. 1995)(finding that employees' signatures to document entitled "Principles of Employment" that specifically referenced arbitration agreement put the employees "on notice" as to the existence of an agreement);  Powers v. United Healthcare, No. HHDCVOOO599925S, 2001 WL 291148, at *2 (Conn. Super. March 2, 2001)(noting that the arbitration agreement was not only included in handbook but also included in signed acknowledgment and offer letter).

It is true that, under the FAA, arbitration agreements must be in writing, but need not be signed.  Sherry, 1999 WL 287738, at * 4 (citing Thompson-CSF S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776-77 (2d Cir. 1995)).  The absence of Whitaker's signature on the arbitration agreement, or on an acknowledgment of receipt of the Employee Guide, is not fatal to the defendant's argument that an agreement to arbitrate claims was formed between the parties.  However, a meeting of minds between the parties as to the formation of the arbitration agreement is required, and Whitaker's signature on the offer later is not sufficient evidence of an intent on her part to be bound by the arbitration agreement.  The offer letter which Whitaker signed

neither makes mention of the arbitration agreement contained in the Employee Guide (as was the case in Topf), nor sufficiently informs Whitaker that the Employee Guide contains terms to which she is contractually obligating herself (as was the case in Topf). Furthermore, the "double presumption" theory put forward by the defendants, i.e., by the terms of the offer letter, Whitaker should be presumed to have signed the acknowledgment form, and therefore, be presumed to have agreed to the arbitration agreement, is not sufficient evidence of Whitaker's actual intent to be bound by the terms of the arbitration agreement.  Accordingly, the court finds that Whitaker was not bound by the arbitration agreement in the Employee Guide by virtue of signing the offer letter.

      The defendants also argue that Whitaker agreed to the arbitration agreement simply by virtue of commencing her employment under all of the mandatory terms and conditions established by WBHH.  They argue that "since Clear Channel required as a condition of employment that Plaintiff agree to arbitrate all claims covered by its Arbitration Agreement, and Plaintiff accepted and commenced employment, it can only be concluded that Plaintiff, either impliedly or expressly, agreed to these terms." Def's Reply Memo., p.7 [Dkt. No. 16].  In other words, apart from Whitaker's signature, the fact that Whitaker commenced work at WBHH implied that she was bound by the mandatory conditions of employment established by WBHH, and those conditions included the arbitration agreement in the Employee Guide.  As the defendants point out, the Supreme Court of Connecticut has made clear that "all employer-employee relationships not governed by express contracts involve some type of implied 'contract' of employment."  Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn.

1, 13 (1995). For the representations of an employer or the terms of an employee handbook to be incorporated into an implied contract for employment,

> the trier of fact is required to find that the employer's oral representations or issuance of a handbook to the employee was an "offer"– i.e., that it was a promise to the employee that, if the employee worked for the company, his or her employment would thereafter be governed by those oral or written statements, or both. If the oral representations constitute an "offer," the trier of fact is then required to find that the employee accepted that offer.

Id. at 13. It may be true that, upon commencing employment, Whitaker was given the Employee Guide, and that the Guide was easily available to her at all times. However, given the presence of the offer letter, and the specific language of the offer letter indicating that it stated the complete contract between the Whitaker and her employer, the court cannot find that the issuance of the Employee Guide was itself part of the offer of employment, as contemplated in Torosyan. In commencing work, Whitaker was bound by the terms described in the signed offer letter, and, as discussed above, those terms did not sufficiently incorporate the arbitration agreement included in the Employee Guide so as to make it binding. Because no agreement to arbitrate claims was formed between the parties, the defendants' motion to compel arbitration is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [Dkt. No. 10] is DENIED.

**SO ORDERED.**

Dated this 16th day of December, 2005, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge